UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOSHUA HOWARD ELZINGA,

      Plaintiff,                    Case No.   15-10808

v                                 HON. THOMAS L. LUDINGTON

BAY CITY PUBLIC SAFETY OFFICER
DONALD ALDRICH; BAY CITY PUBLIC
SAFETY OFFICER KEATH BARTYNSKI;
and CARRIE SUE ALDRICH, Jointly and
Severally,

      Defendants.

_____/

### PLAINTIFF'S ANSWER OPPOSING DEFENDANT CARRIE SUE ALDRICH'S MOTION TO DISMISS, AND ALTERNATIVELY, TO ALLOW PLAINTIFF TO FILE AN AMENDED COMPLAINT and CERTIFICATE OF SERVICE

Plaintiff Joshua Elzinga, through his attorney Thomas M. Loeb answers and opposes Defendant Carrie Sue Aldrich's Motion to Dismiss for the reasons stated more fully in the attached Memorandum of Law.

Alternatively, if this Court finds that Plaintiff's original complaint fails to plausibly state a §1983 civil rights conspiracy, Plaintiff requests that he be allowed to file his first amended complaint (attached).

Respectfully submitted,


  /S/   Thomas M. Loeb
THOMAS M. LOEB   (P25913)
Attorney for Plaintiff
32000 Northwestern Hwy., Ste. 170
Farmington Hills, MI   48334
(248) 851-2020
tmloeb@mich.com

June 4, 2015

## STATEMENT OF QUESTIONS PRESENTED

1. Whether Defendant Carrie Sue Aldrich's Motion to Dismiss pursuant to F.R. Civ. P. 12(b)(6) should be granted?

2. Alternatively, should Plaintiff be allowed to file his First Amended Complaint?

## INDEX OF AUTHORITIES

Page

**United States Supreme Court Cases:**

***Adickes v Kress & Co.***, 398 US 144, 158-59 (1970)……………   7, 8

***Ashcroft v Iqbal,*** 556 US 662, 678 (2009)…………………………   4, 8, 10

***Bell Atlantic Corp. v Twombly***, 550 US 544 (2007)……………   4, 8, 10

***Continental Ore Co. v Union Carbide & Carbon Corp.***, 370 US 690, 700-701 (1962)…………………………………………   7

***Florida v Jardines***, _____ US _____; 133 S. Ct.1409, 1414 (2013)……………………………………………………………………   8

**United States Court of Appeals Cases:**

***Buchanan v Northland Group, Inc.***, 776 F.3d 393, 397 (6th Cir. 2015)…………………………………………………………   4

***Hensley v Gassman***, 693 F.3d 681, 695 (6th Cir. 2012)………   8

***Hooks v Hooks,*** 771 F.2d 935 (6th Cir. 1985)……………………   5, 6, 8

**Court Rules:**

F.R. Civ. P. 12(b)(6)…………………………………………………   2, 4, 11

F.R. Civ. P. 15(a)(1)(B) and (2)……………………………………   10

Rule 12(b)………………………………………………………………   10

**List of Exhibits:**

**Exhibit A**   Plaintiff's proposed First Amended Complaint

1. **Defendant's Motion to Dismiss should be denied, as Plaintiff has properly pled a plausible §1983 civil conspiracy claim against Defendant Carrie Sue Aldrich.**

In this case Defendant Carrie Sue Aldrich has filed her Motion to Dismiss under F.R. Civ. P. 12(b)(6).   In deciding Ms. Aldrich's Motion, this Court must presume that all well-pled allegations in Plaintiff's Complaint are true, resolve all reasonable doubts and inferences in Plaintiff's favor, and view the pleading in the light most favorable to the Plaintiff.   Although F.R. Civ. P. 8(a) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," Plaintiff must still file a pleading that goes beyond "labels and conclusions" or a mere "formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v Twombly*, 550 US 544 (2007).   Stated another way "naked assertions devoid of further factual enhancement contribute nothing to the sufficiency of the complaint." See *Ashcroft v Iqbal,* 556 US 662, 678 (2009):

> "Courts do not lightly reject fact-based claims at the pleading stage.   They may do so only after drawing all reasonable inferences from the allegations in the complaint in the plaintiff's favor and only after concluding that, even then, the complaint still fails to allege a plausible theory of relief.   [Citations omitted]" *Buchanan v Northland Group, Inc.*, 776 F.3d 393, 397 (6th Cir. 2015).

Plaintiff submits that Defendant's objection is not well taken.   In his

4

Complaint, he alleges that Ms. Aldrich acted in joint concert with her husband and Officer Bartynski.   In a 14 page Complaint, Elzinga sets forth the facts and circumstances surrounding the loss of Plaintiff's phone, on Thursday May 2, 2013.   In the leading case of *Hooks v Hooks,* 771 F.2d 935 (6th Cir. 1985) the court set out the elements of a civil conspiracy.   The court noted that a civil conspiracy

> "is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy.   Each conspirator need not have known all of the details of the illegal plan or all of the participants involved.   All that must be shown is that there was a single plan, that the alleged co-conspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant. [Citations omitted]   *Hooks, supra*, at 943-944."

In excruciating detail, Plaintiff set forth the circumstances surrounding his discovery of Officer Ritchey's police car parked illegally; how he took a photo of the police car on his cell phone, uploaded it to Facebook, and posted it; and how Defendant Carrie Sue Aldrich saw the Facebook posting.   The Complaint also notes that Ms. Aldrich informed both her husband and Officer Ritchey of the Facebook posting.   In his Complaint, Plaintiff Elzinga describes how Defendant Officer Aldrich became enraged. His threats to retaliate ("I'm gonna fuck you, you're fucked"…"the Bay City

5

Police Department's gonna fuck you...you better never have another drink in this city and think about driving again because wherever you look there's gonna be one of us") are pled in paragraphs 34 through 36.

Plaintiff alleged (paragraph 37) that he recorded all of this on his cell phone.   Moreover, when Officer Bartynski seized Plaintiff, hustled him out of the bar, and falsely arrested him, Plaintiff specifically pled that Defendants Carrie Sue and Donald Aldrich were present, and that after confiscating Plaintiff's cell phone, Carrie Sue Aldrich directed Bartynski to "get the phone!" or "smash the phone!" repeatedly.   (See paragraph 59).

Moreover, Plaintiff specifically pled that after his phone was confiscated by Officer Bartynski, he gave it to Defendant Carrie Sue Aldrich or her husband (paragraph 61).

When a civilian jointly engages with state officials in a deprivation of civil rights, he or she is acting under color of law for §1983 purposes.   See *Hooks, supra,* at 943.   In order to prove the existence of a civil conspiracy, Elzinga should not be required to provide direct evidence of the agreement between Carrie Sue Aldrich and her coconspirators. Circumstantial evidence may provide adequate proof of conspiracy. Absent the testimony of a co-conspirator, it is unlikely that direct evidence

6

of a conspiratorial agreement will exist.   Thus, the question whether an agreement exists should not be taken from the jury in a civil conspiracy case so long as there is a possibility that the jury can "infer from the circumstances (that the alleged conspirators) had a 'meeting of the minds' and thus reached an understanding" to achieve the conspiracy's objectives. *Adickes v Kress & Co.*, 398 US 144, 158-59 (1970).   Moreover, a plaintiff does not need to prove that each participant in the conspiracy knew the exact limits of the illegal plan or the identity of all participants.   An express agreement among all the conspirators is not a necessary element of a civil conspiracy.   The fact that "all of the evidence…does not point in one direction and different inferences might reasonably be drawn from it" does not justify judicial intrusion into the jury's role in determining whether or not a civil conspiracy existed.   *Continental Ore Co. v Union Carbide & Carbon Corp.*, 370 US 690, 700-701 (1962).

It can hardly be argued that the seizure and destruction of a citizen's cell phone by the police does not implicate the Fourth Amendment.   The Fourth Amendment provides in relevant part that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."   *Florida v*

7

*Jardines*, _____ US _____; 133 S. Ct.1409, 1414 (2013).   Similarly, a citizen's right to use his cell phone to photograph or record events, conversations, or confrontations that the citizen (though unwillingly) is a participant in, implicates the First Amendment.   In proving a conspiracy, Plaintiff is not required to prove an express agreement among all of the conspirators.   Moreover, each conspirator need not have known all of the details of the illegal plan or all of the participants involved.   See *Hooks, supra*, at 944.   In opposing this Motion, Plaintiff is entitled to rely upon circumstantial evidence to establish the agreement among the conspirators.   See *Hensley v Gassman*, 693 F.3d 681, 695 (6th Cir. 2012).   Plaintiff submits that he has pled more than the vague and conclusory allegations condemned by *Twombly* and *Iqbal*.   Whether there is a conspiracy is of course a jury question. "The existence or non-existence of a conspiracy is essentially a factual issue that the jury, not the trial judge should decide."   *Adickes, supra,* 389 US at 176 (Black, J. concurring).

In this case Plaintiff submits that the details of the conspiracy's object and purpose, as well as the overt acts committed in its furtherance are adequately pled in more than conclusory statements or labels.   From the

facts stated in Plaintiff's Complaint, a fact finder could find that the general objective of the conspiracy was to get Elzinga's phone.   The overt act could be Defendant Carrie Sue Aldrich's repeated instructions that Officer Bartynski grab the phone or smash it.   Or, the overt act could be in Officer Bartynski's handing the phone over to Defendant Carrie Sue Aldrich after she demanded it.

Taking the facts as alleged in Plaintiff's Complaint in the light most favorable to him, a jury could conclude that his constitutional rights were violated by the seizure and destruction of his cell phone.   Moreover, a jury could also conclude that Ms. Aldrich was motivated, at least in part, by her concern that Plaintiff might also post to social media her husband's drunken rant when he exclaimed in vulgar detail how he speaks for the Bay City Police Department ("I am the Bay City fucking police", and "I run this City!"; see paragraphs 34, 36).

Because Defendant Carrie Sue Aldrich acted in concert with Officer Bartynski when she first demanded, then received and destroyed Elzinga's phone, Plaintiff's claim should reach the jury, and Defendant Aldrich's Motion to Dismiss should be denied.

9

**2. Alternatively, if this Court believes that Plaintiff has failed to plead a plausible §1983 civil rights conspiracy claim, he should be allowed to file an amended complaint pursuant to F.R. Civ. P. 15.**

For the reasons stated above, Plaintiff believes that he has complied with the requirements of *Iqbal, supra,* and *Twombly, supra*, and that Defendant Aldrich's Motion to Dismiss should be denied.   However, if Plaintiff's pleadings do not satisfy this Court's interpretation of the *Iqbal/Twombly* plausibility requirement, Plaintiff respectfully requests an opportunity to file an amended complaint pursuant to F.R. Civ. P. 15.   A copy of that proposed complaint is attached to this Motion as Exhibit A. This motion is brought pursuant to F.R. Civ. P. 15(a)(1)(B) and (2).   Rule 15(a)(1) allows for an amendment as a matter of course if requested within 21 days after service of a motion under Rule 12(b).   A motion under F.R. Civ. P. 15(a)(2) is allowed only with the opposing party's written consent or the court's leave.   However, the rule states that…"[t]he court should freely give leave when justice so requires."

Plaintiff submits that his proposed first amended complaint more that adequately pleads a plausible scenario showing how the Defendants acted in concert with Officer Bartynski, and that Ms. Aldrich acted under color of law when she aided and encouraged the seizure and destruction of

Plaintiff's cell phone.

THEREFORE, for all of the above reasons, we move that this Honorable Court deny Defendant Carrie Sue Aldrich's Motion to Dismiss pursuant to F.R. Civ. P. 12(b)(6).

Alternatively, if this court should find that Plaintiff failed to properly plead a §1983 civil rights conspiracy, Plaintiff requests that he be allowed to file his first amended complaint.

Respectfully submitted,

_/S/   Thomas M. Loeb_____
THOMAS M. LOEB   (P25913)
Attorney for Plaintiff
32000 Northwestern Hwy., Ste. 170
Farmington Hills, MI   48334
(248) 851-2020
tmloeb@mich.com

June 4, 2015

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2015, I electronically filed the above *Plaintiff's Answer Opposing Defendant Carrie Sue Aldrich's Motion to Dismiss, And Alternatively, to Allow Plaintiff to File An Amended Complaint and this Certificate Of Service* with the Clerk of the Court using the ECF system which will send notification of such filing to the attorneys of record.

_/S/   Patricia E. Sinacola_____
PATRICIA E. SINACOLA
Assistant to Thomas M. Loeb
pat@mich.com

11

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOSHUA HOWARD ELZINGA,

    Plaintiff,                  Case No.   15-10808

v                             HON. THOMAS L. LUDINGTON

BAY CITY PUBLIC SAFETY OFFICER
DONALD ALDRICH; BAY CITY PUBLIC
SAFETY OFFICER KEATH BARTYNSKI;
and CARRIE SUE ALDRICH, Jointly and
Severally,

    Defendants.

_____/

### PLAINITFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND

Plaintiff, by his attorney Thomas M. Loeb, files his First Amended

Complaint against the above named Defendants and in support states as

follows:

### Preliminary Statement

1.    This is an action for money damages brought by Plaintiff, a citizen

and resident of the State of Michigan and Bay County, against

Defendants Bay City Public Safety Officer Donald Aldrich, Bay City

Public Safety Officer Brian Ritchey, Bay City Public Safety Officer

1

Keath Bartynski and Carrie Sue Aldrich for damages arising out of conduct which began on Thursday May 2, 2013 in Bay City, Michigan. As a result, the Defendants caused Plaintiff to be detained, arrested, held in custody, and physically injured without probable cause or even a reasonable suspicion that he had committed a crime.

2. In causing Plaintiff to be assaulted, battered, injured, detained, arrested, and having his phone confiscated, the Defendants conspired to and did violate Plaintiff's Fourth Amendment rights to be free from an illegal seizure of his person and effects, as well as his First Amendment right to freedom of speech, all as guaranteed under the Constitution and laws of the United States.

### *Jurisdiction and Venue*

3. This Court has jurisdiction over these claims pursuant to 28 USC §1331.

4. Venue is properly laid in this Court pursuant to 28 USC §1391(b) as all parties reside in and the claims arose in the Eastern District of Michigan.

2

### *Plaintiff and Defendants*

5.      That at all times relevant to this complaint, the Plaintiff was a resident of Bay City, Bay County, Michigan.

6.      That at all times relevant to this complaint, Defendants Bay City Public Safety Officer Donald Aldrich, Bay City Public Safety Officer Brian Ritchey, Bay City Public Safety Officer Keath Bartynski and Carrie Sue Aldrich resided in the Eastern District of Michigan.

7.      That each Defendant is being sued in his or her individual capacity.

8.      That at all times relevant to this complaint, Defendants Bay City Public Safety Officers Brian Ritchey and Keath Bartynski were acting under color of law as public safety officers for Bay City.

9.      Defendant Donald Aldrich, although off duty at the time of his unlawful conduct, also acted under color of law, as more fully explained throughout this lawsuit.

10.      Alternatively, Defendant Donald Aldrich acted in concert with the other Defendants, incited their unlawful conduct, and as such is equally responsible for Plaintiff's loss.

11.      Defendant Carrie Sue Aldrich (Officer Donald Aldrich's wife) acted

3

in concert with the other Defendants, incited their unlawful
conduct, and as such is equally responsible for Plaintiff's loss.

### Facts

12. On Wednesday May 1, 2013, Plaintiff was a patron at Steamer's
    Pub, a bar and restaurant located in Bay City, Michigan.

13. Sometime while at Steamer's Pub, Plaintiff noticed a police car,
    later determined to be driven by Defendant Ritchey, parked on the
    street facing the wrong way.

14. Plaintiff took a photo of the police car and uploaded it to Facebook
    and posted "Bay City's finest illegally parked so they can flirt with a
    Bay City bartender.   Keep it up Brian Ritchie [sic] you're doing our
    city proud."

15. In taking a photograph of Defendant Ritchey's marked scout car
    parked illegally (facing the wrong way on the street) Plaintiff
    violated no laws.

16. It is perfectly legal in Michigan to take photographs of automobiles
    parked in public places, even if the photo is of a police car.

17. Moreover, Plaintiff violated no laws by posing the photograph on
    his Facebook page along with a statement criticizing a police

4

officer for parking the wrong way on a street during business hours so that the officer can occupy a tavern, or flirt with a bar maid, or both.

18. Plaintiff's Facebook posting was an exercise of First Amendment's freedom of speech involving a matter of public concern.

19. Defendant Carrie Sue Aldrich and her husband Defendant Donald Aldrich were also at Steamer's Pub, celebrating Officer Aldrich's birthday.

20. Defendant Carrie Sue Aldrich was at the time that Plaintiff posted the photo of Defendant Ritchey's scout car a "Facebook friend" of Plaintiff.

21. Because she was a "Facebook friend" at the time, she observed Plaintiff's posting on her cellphone.

22. After observing the above-described Facebook photograph, Carrie Sue Aldrich informed her husband, Defendant Donald Aldrich, of what Plaintiff had done.

23. She is also friends with Defendant Bay City Public Safety Officers Brian Ritchey and Keath Bartynski.

24. Upon information and belief, she also informed Officer Brian

Ritchey that Plaintiff posted a picture of his scout car (with commentary) to Facebook.

25. Defendant Officer Brian Ritchey showed up at Steamer's Pub.

26. Upon information and belief, he was summoned by Defendant Carrie Sue Aldrich.

27. When Officer Ritchey showed up and asked "who's Josh?" Plaintiff identified himself.

28. Officer Ritchey then confronted Plaintiff asking why he posted the picture on Facebook.

29. When Plaintiff explained that he took the picture because Officer Ritchey parked on the wrong side of the street, this upset Officer Ritchey.

30. Officer Ritchey otherwise called Plaintiff "unprofessional," but did not at this time provoke a physical confrontation.

31. When Defendant Donald Aldrich learned what Plaintiff had posted to his Facebook page, he became incensed.

32. He observed Plaintiff in the bar, and proceeded to verbally confront him.

33. Even though off duty his conduct demonstrated that he was acting

6

under color of law.

34. He yelled "I am the Bay City fucking police", and continued to threaten Plaintiff, saying, among other things "I'm gonna fuck you, you're fucked." and other similar threats to retaliate when Officer Aldrich would be on duty.

35. For example, at one point Officer Aldrich yelled "I can't fucking believe you did this.   I'm gonna [sic] fuck you.   The Bay City Police Department's gonna [sic] fuck you.   You better never have another drink in this city and think about driving again because wherever you look there's gonna be one of us."

36. Even though Officer Aldrich had been drinking excessively, he told the bartender "I run this city!" and ordered her to stop serving Plaintiff, stating "He's cut off.   He has to leave."

37. All the while, Plaintiff continued to record the conversation and, upon information and belief, Officer Aldrich's threats, rantings, and ravings were caught on the audio and visual portion of the smart phone.

38. When the bartender questioned Mr. Aldrich's conduct and authority to order people out of the bar, he proceeded to threaten

7

the bartender with criminal violations including, among other things, serving Plaintiff.

39. The above described confrontation between Officer Aldrich and Plaintiff did at times grow loud.

40. However, it never became physical.

41. At his closest, Officer Aldrich got no closer to Plaintiff than two feet, and neither man laid hands on the other.

42. As Officer Aldrich was confronting Plaintiff, Officer Ritchey had already left the scene and met up with Defendant Keath Bartynski, who was also on duty.

43. While Ritchey was "venting" with Keath, Officer Ritchey received a text message from Defendant Carrie Sue Aldrich.

44. The text message advised that Officer Ritchey should return to the pub because "Don is going to fight him," (referring to Plaintiff.)

45. Officer Ritchey advised Officer Bartynski of the text, and they both drove separately to Steamer's Pub.

46. When Officer Bartynski entered Steamer's Pub he observed co-Defendant Donald Aldrich arguing with Plaintiff.

47. Instead of trying to calm down his friend and fellow officer,

8

Defendant Bartynski instead grabbed Plaintiff and physically removed him from the restaurant.

48. In the process of removing Plaintiff from the restaurant, Officer Bartynski beat, battered, and bruised Plaintiff.

49. When he marched Plaintiff out of the restaurant, Bartynski gratuitously and violently ran Plaintiff into one or more walls, or the door jamb, or both.

50. He also grabbed Plaintiff with excessive and unnecessary force, leaving bruises on his arms.

51. Once Officer Bartynski had Plaintiff outside Steamer's Pub, he violently, forcefully and gratuitously bent Plaintiff over a scout car, proceeded to pat Plaintiff down.

52. At the time of this pat down, there was not even articulable suspicion that Plaintiff was, had been, or will be committing a crime.

53. While this was going on, Plaintiff still had his cell phone in his hand, and was still recording the events.

54. After patting Plaintiff down, Officer Bartynski decided to arrest him. He took Plaintiff's arms, put them behind Plaintiff's back, and

handcuffed him.

55.   Thereafter, Plaintiff was unceremoniously and violently placed in the back seat of Officer Bartynski's scout car.

56.   While this was going on, Carrie Sue Aldrich, Donald Aldrich, and Officer Ritchey left the restaurant together and joined Officer Bartynski at his scout car.

57.   In fact, even though Officer Aldrich was allegedly off duty, he got very close to Officer Bartynski.

58.   Carrie Sue Aldrich began shouting "Get the phone!" and "let's smash the phone!" repeatedly.

59.   In response to Defendant's Carrie Sue Aldrich's repeated demands, Officer Bartynski took Plaintiff's phone from Elzinga.

60.   After taking Plaintiff's phone from Elzinga Officer Bartynski turned the phone over to Carrie Sue Aldrich, or Officer Aldrich, or both. The Aldrichs then left the location with Plaintiff's phone in their possession.

61.   Plaintiff remained under arrest and confined to the back seat of Officer Bartynski's scout car on public display.

62.   Thereafter, he was released on the scene without formal charges

being filed.

63. To this day, Plaintiff's phone has never been returned.

64. The phone taken from Plaintiff by Defendants had significant personal and sentimental value.

65. The reason is that the phone contained nearly all of the photographs he had of his daughter, and other family members.

66. Because of Defendants' conduct, as stated more thoroughly throughout this Complaint, Plaintiff's pictures have been lost forever.

67. Plaintiff's detention, assault, arrest, and seizure of his cell phone was motivated in whole or in part because he posted a picture to his Facebook page of Officer Ritchey's scout car parked facing the wrong way on a side street in Bay City.

68. Defendant Keath Bartynski was charged with the offense of assaulting Plaintiff, contrary to MCL 750.82.

69. On Friday August 15, 2014, Defendant Bartynski was convicted of the misdemeanor crime of assault by a jury of his peers in the 74th District Court for Bay County.   (See *People v Keath Brian Bartynski*, Case No. 14-30206-SM).

11

70. That as a direct and proximate result of the conduct of Defendants, referred to more fully above, Plaintiff suffers and continues to suffer embarrassment; indignation; anxiety; aggravation; humiliation; outrage; shame; loss of his cell phone and the pictures contained within it; injury; and denial of constitutional rights.

71. That as a result of their unlawful, malicious, reckless, and indifferent acts or omissions, the Defendants both alone and in concert, conspired to and acted under color of law but contrary to law and did deprive Plaintiff of his rights, privileges, or immunities secured under the Constitution and laws of the United States and 42 USC §1983, including:

   a. His right to be free from an unreasonable seizure of his person, as guaranteed by amendments IV and XIV of the United States Constitution, by causing him to be detained and patted down without articulable suspicion that he had committed a crime;

   b. His right to be free from an unreasonable seizure of his person, as guaranteed by amendments IV and XIV of the United States Constitution, by causing him to be arrested without probable

12

cause to believe that he had committed a crime;

c. His right to be free from an unreasonable seizure of his person, as guaranteed by amendments IV and XIV of the United States Constitution, by subjecting him to physical injury during his detention or arrest, through the use of gratuitous, unnecessary, and excessive force;

d. His right to be free from unreasonable seizure of his personal effects, as guaranteed by amendments IV and XIV of the United States Constitution, by causing the seizure and loss of his cell phone and the contents contained within it, without a search warrant, arrest warrant, consent, or other exigency justifying it.

e. His right to freedom of speech and due process of law, as guaranteed by amendments I and XIV of the United States Constitution, by causing him to be detained, arrested, and having his cell phone confiscated in whole or in part because he lawfully took a photograph of a police car parked the wrong way on a side street in Bay City.

THEREFORE, Plaintiff demands judgment against the Defendants

13

for compensatory damages, jointly and severally, in whatever amount the jury may determine, plus costs, pre-judgment and post-judgment interest, and actual attorney fees pursuant to 42 USC §1988. Additionally, Plaintiff demands judgment against each Defendant individually for punitive damages in whatever amount the jury may determine, plus costs, pre-judgment and post-judgment interest, and actual attorney fees pursuant to 42 USC §1988.

**PALINTIFF DEMANDS A JURY TRIAL.**

Respectfully submitted,

 /S/   Thomas M. Loeb
THOMAS M. LOEB   (P25913)
Attorney for Plaintiff
32000 Northwestern Hwy., Ste. 170
Farmington Hills, MI   48334
(248) 851-2020
tmloeb@mich.com

June        , 2015

14