UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOSHUA HOWARD ELZINGA,

        Plaintiff,                                  Case No. 15-cv-10808

v                                                    Honorable Thomas L. Ludington

CARRIE SUE ALDRICH, et al.,

        Defendants.

_____/

**ORDER GRANTING IN PART MOTION TO DISMISS AND CANCELLING HEARING**

On March 5, 2015, Plaintiff Joshua Howard Elzinga filed a 42 U.S.C. § 1983 complaint alleging that members of the Bay City Police Department (Donald Aldrich, Brian Ritchey, and Keath Bartynski) and Carrie Sue Aldrich had violated his constitutional rights during an altercation at a bar.

On May 15, 2015, Defendant Carrie Sue Aldrich filed a motion to dismiss, claiming that Elzinga had not sufficiently pleaded a § 1983 conspiracy claim against her.  However, because Elzinga's complaint sets forth sufficient facts to show an agreement between Carrie Sue Aldrich and her Co-Defendants to deprive Elzinga of his constitutional rights, her motion to dismiss will be denied in part.

**I.**

On May 1, 2013, Elzinga noticed a police car parked on the street facing the wrong way outside a local bar, Steamer's.  Compl. ¶ 12-13.  Elzinga took a photo of the police car with his phone and uploaded it to Facebook with the caption "Bay City's finest illegally parked so they can flirt with a Bay City bartender.  Keep it up Brian Ritchie [sic] you're doing our city proud."  *Id.* at 14.

Defendant Carrie Sue Aldrich was a Facebook friend of Elzinga's at the time of the post, and she observed Elzinga's post while at Steamer's with her husband, Donald Aldrich, a Bay City Public Safety Officer. Compl. ¶ 20. After seeing Elzinga's Facebook post, Carrie Sue Aldrich showed the post to her husband and then summoned Bay City Public Safety Officer Brian Ritchey to Steamer's Pub. *Id*. ¶ 26.

When he arrived at the bar, Brian Ritchey confronted Elzinga, asking why he had posted the picture on Facebook. Compl. ¶ 28. Elzinga "explained that he took the picture because Officer Ritchey parked on the wrong side of the street . . . ." *Id*. ¶ 29. Ritchey was "upset" and called Elzinga "unprofessional". *Id*. 29-30.

Donald Aldrich, however, became "incensed" upon learning of the Facebook post. Compl. ¶ 31. He confronted Elzinga at the bar, yelling "I am the Bay City fucking police" and threatened "I'm gonna fuck you, you're fucked." *Id*. ¶ 34. Elzinga recorded Donald Aldrich's threats on his phone. *Id*. ¶ 37. Donald Aldrich then threatened to charge the bartender with criminal violations if she continued to serve Elzinga. *Id*. ¶ 38.

In the meantime, Ritchey had left the bar and met with Defendant Bartynski, also a Bay City Public Safety Officer. Compl. ¶42. While "venting" with Bartynski, Ritchey received a text message from Carrie Sue Aldrich advising Ritchey to return to the bar because "Don is going to fight [Elzinga]". *Id*. 43-44. Ritchey told Bartynski about the text, and they both drove separately to the bar.

When he arrived at the bar, Bartynski observed the verbal argument between Donald Aldrich and Elzinga and "grabbed [Elzinga] and physically removed him from the restaurant." Compl. ¶ 46-47. Bartynski "forcefully and gratuitously bent [Elzinga] over a scout car [and] proceeded to pat [him] down." *Id*. ¶ 51. Elzinga was still recording the events with his phone, which was in his pocket. *Id*. ¶ 52. After the pat-down, Bartysnki arrested Elzinga and placed

him in the back of the scout car. *Id*. ¶ 54-56. Carrie Sue Aldrich, Donald Aldrich, and Ritchey were also outside the bar and observing the arrest. *Id*. ¶ 57.

Carrie Sue Aldrich "began shouting 'Get the phone!' or 'Smash the phone!' repeatedly." Compl. ¶ 59. Bartynksi then took Elzinga's phone and "turned the phone over to Carrie Sue Aldrich, or Officer Aldrich, or both." *Id*. ¶ 61. Elzinga's phone has never been returned. *Id*. ¶ 64.

On March 5, 2015, Elzinga filed suit against Defendants, alleging that they violated his constitutional rights by (1) "causing him to be detained and patted down without articulable suspicion that he had committed a crime"; (2) "causing him to be arrested without probable cause to believe that he had committed a crime"; (3) "by subjecting him to physical injury during his detention or arrest"; (4) "causing the seizure and loss of his cell phone and the contents contained with it"; and (5) "causing him to be detained, arrested, and having his cell phone confiscated in whole or in part because he lawfully took a photograph of a police car parked the wrong way on a side street in Bay City." Compl. ¶ 72.[1]

## II.

This Court may dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his

---

[1] On Friday, August 15, 2014, Defendant Bartynski was convicted of the misdemeanor crime of assault by a jury in the 74th District Court for Bay County. Compl. ¶ 70 (citing *People v. Keath Brian Bartynski*, Case No. 14-30206-SM).

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

While there is generally no heightened pleading requirement for claims made under 41 U.S.C. § 1983, *Am. Postal Workers* Union, 361 F.3d at 902, a § 1983 conspiracy must be pled with some specificity. *See Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987) ("It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983 . . . .").

### III.

In her motion to dismiss, Carrie Aldrich claims that there was no agreement to deprive Elzinga of his constitutional rights, and even if there was, she was not a part of the agreement. She instead claims that she was "spontaneous participant" in an "unplanned altercation." Reply 3.

Generally, a plaintiff may not bring a § 1983 claim against a private civilian, such as Carrie Sue Aldrich. *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003). One exception to this general rule is when a private civilian joins in a conspiracy with state actors to violate a plaintiff's civil rights. *Hooks v. Hooks*, 771 F.2d 935 (6th Cir. 1985). Here, Elzinga alleges that Carrie Sue Aldrich conspired with her Co-Defendants (all of whom are state actors) to deprive Elzinga of his Fourth Amendment rights to be free from unreasonable searches and seizures. Specifically, Elzinga alleges that Carrie Sue Aldrich joined a conspiracy to take and destroy his phone.

A civil conspiracy claim under § 1983 lies where there is "an agreement between two or more persons to injure another by unlawful action." *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007). To prevail on a civil conspiracy claim, a plaintiff must demonstrate "that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed" in furtherance of the conspiracy that caused the injury.[2] *Id*.

A plaintiff is not, however, required to prove an express agreement among all the conspirators, and "[e]ach conspirator need not have known all of the details of the illegal plan or all of the participants involved."[3] *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985). The Sixth Circuit has explained that a "tacit or mutual understanding between the parties is enough to prove a conspiratorial agreement." *United States v. Barger*, 931 F.2d 359, 369 n.6 (6th Cir. 1991) (citing *United States v. Bavers*, 787 F.2d 1022, 1026 (6th Cir. 1985).

Here, the complaint alleges that Carrie Sue Aldrich encouraged her Co-Defendants by "shouting 'Get the phone!' or 'Smash the phone!' repeatedly." Compl. 59. Then, according to the complaint, Defendant Bartynski "took Plaintiff's phone from him," and "turned the phone over to Carrie Sue Aldrich, or Officer Aldrich, or both." Compl. ¶ 60-61. Carrie Sue Aldrich's directions to take Elzinga's phone, followed by Bartynski's compliance with those directions and her subsequent receipt of the phone, is sufficient to plead an agreement. There is no requirement that Defendants had to discuss the agreement ahead of time; it is sufficient that they agreed (both verbally and by action) to take Elzinga's phone from him. Accordingly, Carrie Sue Aldrich's

---

[2] Carrie Sue relies on an unpublished Fifth Circuit case requiring a plaintiff to also allege that there was a preconceived plan. *See* Reply 3 (citing *Gonzales v. H. E. Butt Grocery Co.*, 226 F. App'x 342, 345 (5th Cir. 2007). Although precedent from sister circuits has persuasive appeal, this Court is not bound by that holding. Indeed, the Sixth Circuit has never required that a conspiratorial agreement be planned in advance or preconceived, and no district court in this circuit has ever followed that holding in *Gonzales*.

[3] In the criminal context, the Sixth Circuit has further explained that a "tacit or mutual understanding between the parties is enough to prove a conspiratorial agreement." *United States v. Barger*, 931 F.2d 359, 369 n.6 (6th Cir. 1991) (citing *United States v. Bavers*, 787 F.2d 1022, 1026 (6th Cir. 1985).

motion to dismiss will be denied to the extent it seeks dismissal of the claims related to the removal of Elzinga's phone (Compl. ¶ 72(d-e)).[4]

However, Elzinga has not furnished any facts in his complaint that would indicate that there was an agreement between Carrie Sue Aldrich and her Co-Defendants to have Elzinga illegally searched and arrested. Although Carrie Sue Aldrich initially informed her Co-Defendants of the Facebook posting and requested that Ritchey and Bartynski return to the bar, there is no allegation that these actions were taken pursuant to an agreement to have Elzinga searched and arrested. Accordingly, to the extent that Carrie Sue Aldrich seeks dismissal of Elzinga's claims related to his seizure and arrest (Compl. ¶ 72(a-c)), these claims will be dismissed.

**IV.**

Accordingly, it is **ORDERED** that Defendant Carrie Sue Aldrich's Motion to Dismiss (ECF No. 16) is **GRANTED IN PART AND DENIED IN PART**. Plaintiff Elzinga's § 1983 claims against Carrie Sue Aldrich for illegal search and arrest (Compl. ¶ 72 (a-c)) are **DISMISSED**.

It is further **ORDERED** that the motion hearing set for July 28, 2015 is **CANCELLED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: June 29, 2015

---

[4] As part of his response, Elzinga requests permission to amend his complaint in the event that this Court finds that he has not adequately pleaded a § 1983 conspiracy claim. This request will be disregarded because the parties are not permitted to include motions in their responses. *See* Motion Practice Guidelines for Judge Thomas L. Ludington, Separate Motion and Brief, available at http://www.mied.uscourts.gov/Judges/guidelines/topic.cfm?topic_id=360 ("Motions may not be included within or appended to a response or a reply.").

- 7 -

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 29, 2015.

s/Karri Sandusky
Karri Sandusky, Acting Case Manager